IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 23, 2007 Session[1]

**BRENDA J. WOODWARD v. MICHAEL V. WOODWARD**

**Appeal from the Circuit Court for Hamilton County**
**No. 04D1684     L. Marie Williams, Judge**

---

**No. E2006-1110-COA-R3-CV -  FILED MAY 11, 2007**

---

In this divorce case, Husband argues that the trial court erred in its classification, valuation, and division of the marital estate, including the award to Wife of $1,000 to "equalize the marital property division." Upon our determination that the evidence did not support an award of $1,000 to Wife to equalize the marital property division, the trial court's judgment is vacated in that regard. In all other respects, Husband failed to show that the evidence preponderated against the trial court's decision, and the judgment is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated in Part and Affirmed in Part; Cause Remanded**

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., joined. D. MICHAEL SWINEY, J., filed a dissenting opinion.

Grace E. Daniell, Chattanooga, Tennessee, for the appellant, Michael V. Woodward.

Lisa Z. Bowman, Chattanooga, Tennessee, for the appellee, Brenda J. Woodward.

**OPINION**

*I. Background*

Brenda J. Woodward ("Wife") and Michael V. Woodward ("Husband") were married on March 1, 2003; separated on August 12, 2004; and granted a divorce by judgment entered April 28, 2006. At the time of trial, Wife and Husband were in their fifties and were employed as electricians by the Tennessee Valley Authority ("TVA"). No children were born during the marriage. Both parties had been previously married, and it does not appear that either party had minor children at the time of trial.

---

[1]Oral arguments in this matter were heard as part of the Court's CASE Project (Court of Appeals Affecting Student Education), on February 23, 2007, at Sequoyah High School in Monroe County, Tennessee.

At the time of the marriage, each party held a retirement account and TVA 401(k) account. Additional property owned by Husband at the time of the marriage included a house on Friendship Lane in Hixson, Tennessee ("the Friendship Lane property"); a house on Delores Road in the Port Serena subdivision ("the Port Serena property"); and approximately $5,000 in cash. Additional property owned by Wife at the time of marriage included four acres of unimproved land on Newman Road at Soddy Creek ("the Soddy Creek property"); a Ford f-150 truck; a Craftsman boat; a mobile home; kitchen appliances; approximately $9,000 in cash; and a TVA annuity account.

During the marriage, the parties sold the Port Serena property for $81,272, of which amount $57,000 remained at the time of divorce. Property acquired by the parties during the marriage included a sixteen-foot boat, a riding lawnmower, a 1998 Montana camper, and 1997 Dodge Ram truck. After the parties separated, Wife received workers' compensation funds in the amount of $22,000 for an injury she sustained before the parties' marriage. She combined these workers' compensation funds with $3,000 in post-separation earnings and used the total $25,000 as a down payment on her purchase of a house on Baptist View Drive, where she resided at the time of the divorce.

The trial court granted the parties a divorce upon joint stipulation of grounds. By further agreement, each party retained his or her respective retirement account and TVA 401(k) account and Wife retained her TVA annuity account. The trial court found that the following assets, held by each party at the time of marriage, were marital property, having been commingled during the marriage, and divided such assets as follows. Each party was awarded all household goods and furnishings, and personal belongings currently in his or her possession, along with his or her individual financial accounts. Wife also received the Craftsman boat, the riding lawnmower, the Soddy Creek property, one-half of the post marital appreciation accrued on the Friendship Lane property, and $28,500, representing one-half of proceeds attributed to the sale of the Port Serena property. Husband received the Friendship Lane property, less one-half of the post marital appreciation of same; and retained one-half of proceeds on hand from the sale of the Port Serena property. The trial court also ordered that the Montana camper, sixteen-foot boat, and Dodge Ram truck be sold and that the proceeds be divided equally between the parties. Finally, Wife was awarded $1,000 "to equalize the marital property division between the parties." Husband appeals.

## II. Issues

The following issues are presented for our review:

1) Whether the trial court erred in its classification and division of the marital estate.

2) Whether the trial court erred in its valuation of the Soddy Creek property.

3) Whether the trial court erred in awarding Wife $1,000 "to equalize the marital property division between the parties."

### III. Analysis

### A. Standard of Review

In a non-jury case such as this one, we review the record *de novo* with a presumption of correctness as to the trial court's determination of facts, and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to the trial court's factual findings. *Seals v. England/Corsair Upholstery Mfg. Co.,* 984 S.W.2d 912, 915 (Tenn. 1999). The trial court's conclusions of law are accorded no presumption of correctness. *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn. 1993).

The classification of property as either marital or separate is a factual question, *Current v. Current*, No. M2004-02678-COA-R3-CV, 2006 WL 656791, at *1 (Tenn. Ct. App. M.S., Mar. 15, 2006), and, in accordance with Tenn. R. App. P. 13(d), a trial court's decision in that regard will not be disturbed unless the evidence preponderates to the contrary. While assets acquired by the parties during the marriage are presumed to be marital property, *see* Tenn. Code Ann. § 36-4-121(b)(1)(A), that presumption is subject to rebuttal by a preponderance of proof that an asset is actually the separate property of either spouse. *Dunlap v. Dunlap*, 996 S.W.2d 803, 814 (Tenn. Ct. App. 1998).

Decisions as to the value of the parties' assets are also decisions of fact, *Kinard v. Kinard*, 986 S.W.2d 220 at 231 (Tenn. Ct. App. 1998), are entitled to great weight on appeal, and will not be second-guessed unless they are not supported by a preponderance of the evidence. *Ray v. Ray*, 916 S.W.2d 469, 470 (Tenn. Ct. App. 1995). When a trial court is confronted with conflicting valuation evidence, the court may place a value on the property that is within the range of the values represented by all the relevant valuation evidence. *Watters v. Watters*, 959 S.W.2d 585, 589 (Tenn. Ct. App. 1997); *Brock v. Brock*, 941 S.W.2d 896, 902 (Tenn. Ct. App. 1996).

After the parties' marital estate has been classified and valued, the trial court is required to divide the marital property in an equitable manner. Tenn. Code Ann. § 36-4-121(a)(1); *Miller v. Miller*, 81 S.W.3d 771, 775 (Tenn. Ct. App. 2001). The mere fact that the division of marital property is unequal does not render the division inequitable. *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002).

### B. Classification and Division

The first issue we address is whether the trial court erred in its classification and division of the marital estate.

Husband asserts that the trial court erred in its classification of property and contends that "the overall intent of the parties was to keep their pre-marital property separate along with any

appreciation during the marriage." Based upon this argument, Husband maintains he should have been awarded all equity in the Friendship Lane property and all proceeds from the sale of the Port Serena property, as his separate property. We disagree based upon our review of the evidence, which supports a finding that both of these assets were transmuted to marital property during the parties' marriage.

During the marriage, when parties treat their separate property in such a way as to show their intent that it become marital property, transmutation occurs, as the Tennessee Supreme Court discussed in *Langschmidt v. Langschmidt*, 81 S.W.3d 741 (Tenn. 2002), as follows:

> [S]eparate property becomes marital property [by commingling] if inextricably mingled with marital property or with the separate property of the other spouse. If the separate property continues to be segregated or can be traced into its product, commingling does not occur . . . . [Transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property . . . . The rational underlying these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based upon the provision in many marital property statutes that property acquired during the marriage is presumed to be marital. The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate.

*Langschmidt*, 81 S.W.3d at 747, citing Homer H. Clark, *The Law of Domestic Relations in the United States*, §16.2 at 185 (2d ed. 1987).

In an earlier case, we recognized that one means by which transmutation is brought about is "by placing separate property in the names of both spouses." *Batson v. Batson*, 769 S.W.2d 849, 858 (Tenn. Ct. App. 1988). That is precisely what occurred in the instant matter. Husband came into this marriage with the Friendship Lane property, the Port Serena property, and $5,000. After the parties were married, Husband titled both the Friendship Lane property and the Port Serena property in the parties' joint names and thereby created a rebuttable presumption of a gift to the marital estate. *See Eldridge v. Eldridge,* 137 S.W.3d 1,14 (Tenn. Ct. App. 2002); *Barnhill v. Barnhill*, 826 S.W.2d 443, 452 (Tenn. Ct. App. 1991); *Lamb v. Lamb*, M2004-01768-COA-R3-CV, 2006 WL 482917 at *3 (Tenn. Ct. App. M.S., February 28, 2006). We find no evidence in the record that rebuts this presumption. To the contrary, the record confirms that it was Husband's intent that these properties become marital assets and not be treated as his separate property. In that regard, we note that the Friendship Lane property served as the marital residence, and the proceeds received from the sale of the Port Serena property were deposited in the parties' joint account. We also observe that although Husband requests that this Court award him "the Friendship Lane property including all equity in said property," in fact, the trial court did award Husband the Friendship Lane property, assigning it a premarital value of $55,000, and also awarded Husband one-half of the post

marital appreciation on that property. We do not agree with Husband's contention that an award was improper in light of our conclusion that the trial court did not err in finding that the Friendship Lane property was marital property.

Husband also argues that even if the Friendship Lane and Port Serena properties are treated as marital property, they should have been awarded to him rather than Wife based upon T.C.A. § 36-4-121(c), which provides that the following factors are to be considered by the court in making an equitable division of marital property:

(1) The duration of the marriage;
(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
(4) The relative ability of each party for future acquisitions of capital assets and income;
(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
(6) The value of the separate property of each party;
(7) The estate of each party at the time of the marriage;
(8) The economic circumstances of each party at the time the division of property is to become effective;
(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;
(10) The amount of social security available to each spouse; and
(11) Such other factors as are necessary to consider the equities between the parties.

With specific reference to some of these factors, Husband asserts that the parties were in their early fifties at the time of trial, and that they earned approximately the same salary from their employment as electricians. Husband further asserts that each party holds "substantial retirement benefits" and that each held "substantial assets prior to the marriage." However, Husband fails to demonstrate that the trial court did not properly consider these factors in reaching its decision or why these factors dictate a division of assets contrary to that ordered by the trial court. Husband also notes that the parties' marriage was one of short duration, and he appears to rely primarily on this factor in arguing that the trial court's division of property was inequitable. In support of his argument that the trial court failed to properly consider the short duration of the marriage, Husband

cites *Batson v. Batson*, 769 S.W.2d 849, wherein we held that in a marriage of relatively short duration, the parties should "be restored to their pre-marriage financial conditions," *id.* at 859, i.e. to "their respective net worths," that existed at the time of their marriage. *Id.* at 861. However, Husband fails to show the net worths of the parties at the time they married or how the division he demands would restore each party to his or her financial condition as it was at that time. We emphasize that this court's ruling in *Batson* that each party be restored to his or her net worth/financial condition at the time of marriage does not necessarily entail the award of any specific asset to either party.

Furthermore, while our decision in *Batson* was based in part upon the short duration of the parties' marriage, it was also determined by other circumstances that are not present in the instant case. In *Batson,* our decision was influenced by, among other things, the fact that the husband's net worth at the time of marriage was ten times the net worth of the wife and his annual income was nine times larger than hers and that during the marriage, the parties supported themselves primarily on the husband's income. In this case, the evidence does not preponderate in favor of similar factual findings. There was not such economic and earning disparity in this case as there was in *Batson.* We further observe that in the instant case, the trial court did acknowledge the brevity of the marriage, stating "this is a marriage of short duration, approximately 18 months." However, it is clear that the trial court concluded that this factor alone did not warrant a larger award of assets to Husband. In accord, we have noted on prior occasion that while "the duration of the marriage" appears as the first factor in the statute, "this should not be interpreted to mean that this factor should always carry more weight than the others. The factors are not listed in order of importance, and each is to be considered in relation to the specific facts of each case." *Powell v. Powell*, 124 S.W.3d 100, 108 n.8 (Tenn. Ct. App. 2003).

We also note that while Husband's argument is based upon the premise that Wife was awarded one-half of the value of the property he owned prior to the marriage, the record does not support that conclusion. Specifically, Husband complains that he was not awarded, 1) "the Friendship Lane property, including all equity in said property;" and 2)"the remaining sale proceeds from the Port Serena property totaling $57,000." In fact, the trial court did not award Wife one-half of either of these properties.

As found by the trial court, the premarital value of the Friendship Lane property was $55,000, and the trial court awarded that property to Husband, along with one-half of its post marital appreciation. The trial court's award to Wife of one-half of the post marital appreciation of the Friendship Lane property was not an award of property belonging to Husband at the time of marriage, and Husband's reliance upon *Batson* and the rule that in marriages of short duration the parties should be restored to their premarital financial conditions is misplaced.

As to the Port Serena property, it is clear that Wife was not awarded one-half of the $81,272 realized from the sale of such property during the marriage. Instead, Wife was awarded $28,500, representing one-half of the $57,000 remaining from the sale proceeds and constituting a little more than one-third of the total sales amount. Furthermore, Wife testified that the Port Serena property

was only worth $30,000 to $40,000 when the parties married. She also testified that when they decided to sell the Port Serena property, it "was in bad shape . . . [a]fter his daughter had lived there, it was nasty. We had maggots - - they had let the dogs in and use the bathroom everywhere." Wife testified that in addition to cleaning the house, she and Husband painted it, changed the electrical wiring throughout, repaired plumbing, put in new doors, replaced cracked windows, and fixed the roof. Wife testified that this work took three months to accomplish and accounted for the increased value of the house when it was sold.

Husband also contends that "it was inequitable to award [Wife] one-half of the value of his property that he owned prior to the marriage but not award [him] one-half of the property owned by [W]ife prior to the marriage and her workers' compensation award." In support of this conclusory statement, Husband references no proof that the trial court's failure to make these awards resulted in an unfair disparity between the overall value of assets awarded Wife and assets awarded Husband. Furthermore, it is our determination that the workers' compensation funds in the amount of $22,000 were not commingled and were properly classified as separate property. Although the workers' compensation funds were received during the marriage, the presumption that the funds were marital property was rebutted by evidence showing that the purpose of these funds was to compensate Wife for a work-related injury sustained prior to the marriage for which she received no medical treatment during the marriage, were not received by Wife until after the parties separated, were deposited in Wife's separate bank account, and were never placed in a joint account. Furthermore, the funds were used by Wife as part of a down payment on a house that she purchased after the parties' separation, and Husband testified that he had no interest in the house, that he had signed documentation to that effect, and that he was claiming no interest in the house ("I don't want nothing out of it."). The record presents no basis for finding that the trial court erred in failing to award Husband either one-half of Wife's premarital property or her workers' compensation award.

In sum, we cannot agree that the evidence preponderates against the trial court's decision as to the classification and division of the marital estate, and, accordingly, we find Husband's argument in that regard to be without merit.

### C. Valuation

The next issue addressed is whether the trial court erred in its valuation of the Soddy Creek property. As previously stated, the trial court awarded the Soddy Creek property to Wife, and in its memorandum opinion, the trial court valued this property at $15,000. Husband argues "there was not sufficient evidence in the record to support a finding that the value of [this] property was $15,000." However, as we noted above, "when valuation evidence is conflicting the court may place a value on the property that is within the range of values represented by all the relevant valuation evidence." *Watters v. Watters*, 959 S.W.2d at 589. Husband said this property was worth $50,000; Wife said it was worth $15,000. Other than his own testimony, Husband references no proof showing that Wife's assessment of the value of this property at $15,000 was inaccurate or that the trial court erred in finding her testimony to be credible in this regard, and it is our determination that

the evidence does not preponderate against the trial court's finding that the value of the Soddy Creek property was $15,000.

### D. Equalization

The final issue presented is whether the trial court erred in ordering Husband to pay Wife $1,000 which the trial court stated it awarded Wife "to equalize the marital property division between the parties." Husband contends that such award was inequitable. In its memorandum opinion, the trial court states that this $1,000 was "for personalty which [Wife] brought into the marriage which is no longer available for division." After careful review of the record, we are compelled to agree with Husband upon our finding that the evidence is insufficient to support this additional award to Wife. Accordingly, such award is vacated.

### IV. Conclusion

After considering all of the arguments made by Husband as to the classification, valuation, and division of the marital estate and reviewing the record and applicable law, we hold that the evidence does not preponderate against the trial court's decision except as regards the trial court's award to Wife of $1,000 "to equalize the marital property division between the parties." Accordingly, the judgment of the trial court is affirmed in all respects except as to the award of $1,000 to Wife "to equalize the marital property division between the parties," which award is hereby vacated. We further remand this case to the trial court for whatever changes may be necessary consistent with our opinion herein. Costs of appeal are assessed to the parties equally.

_____
SHARON G. LEE,  JUDGE